ELIZABETH MCKENNA, INDIVIDUALLY AND AS EXECUTRIX FOR THE ESTATE OF JAMES MCKENNA, DECEASED, PLAINTIFF-RESPONDENT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, BOARD OF TRUSTEES, TEACHERS PENSION AND ANNUITY FUND, BOARD OF EDUCATION, CITY OF NEWARK, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted September 23, 1987—Decided April 4, 1988.

Before Judges FURMAN, BRODY and LONG.

*W. Cary Edwards,* Attorney General, attorney for appellant Board of Trustees, Teachers' Pension and Annuity Fund (*Michael R. Clancy,* Deputy Attorney General, of counsel, *David Katzenstein,* Deputy Attorney General, on the brief).

*Shanley & Fisher,* for defendant-appellant Prudential Insurance Company of America (*Charles A. Reid, III,* on the letter brief).

*Greg Riley,* for respondent.

The opinion of the court was delivered by

LONG, J.A.D.

The Prudential Insurance Company of America (Prudential) and the Board of Trustees (Board) of the Teachers Pension and Annuity Fund (TPAF) here challenge a determination by the trial judge that James McKenna, a TPAF member, died within the conversion period provided in his group insurance policies, thus entitling plaintiff, Elizabeth McKenna, his widow and Executrix, to the amount of insurance McKenna might have converted had he lived to the end of the period. We affirm.

By way of background, a brief description of the relevant statutory scheme is in order. TPAF is the corporate entity which arranges for the payment of retirement and death benefits to those who qualify for membership in the fund. *N.J.S.A.* 18A:66-2(q). In addition to basic retirement allowances, the TPAF statute provides death benefits for its members. These benefits, which are the focus of this appeal, fall into two broad categories: basic noncontributory benefits and optional contributory benefits. Upon the death of a member "in service," the beneficiaries of the member shall receive 1½ times the salary of the last year of creditable service. *N.J.S.A.* 18A:66-38(b). This is a basic noncontributory benefit. In addition to this, a member may purchase a further death benefit of two times the final salary to be paid upon his or her death in service. *N.J.S.A.*

18A:66–53(e). Thus, the beneficiary of a member who dies in service may receive a total death benefit of 3½ times final salary. If a member elects early retirement, the basic noncontributory death benefit is reduced from 1½ to ³⁄₁₆ times the member's final salary. *N.J.S.A.* 18A:66–37. Likewise, upon retirement, the optional benefit of two times final salary is reduced to ¼ (⁴⁄₁₆) times final salary. A retired member thus may receive a total death benefit package of ⁷⁄₁₆ times final salary.

In order to provide these benefits, the State Treasurer and the Board are authorized to purchase group life insurance policies. *N.J.S.A.* 18A:66–74. These policies must conform with statutory requirements including *N.J.S.A.* 18A:66–79, which prescribes that such policies: "shall include, with respect to any insurance terminating or reducing because the member has ceased to be in service or has retired, the conversion privilege available upon termination of employment as prescribed by the law relating to group life insurance."

The law relating to group life insurance is set forth in *N.J.S.A.* 17B:27–1 *et seq.* and requires that the group policy contain

> a provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment or of membership in the class or classes eligible for coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance ..., provided application for the individual policy shall be made, and the first premium paid to the insurer, within 31 days after such termination ... [*N.J.S.A.* 17B:27–19.]

The payment of benefits upon death within the conversion period is covered by *N.J.S.A.* 17B:27–21, which requires that the policy must also contain

> a provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with section 17B:27–19 ... and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made. [*N.J.S.A.* 17B:27–21.]

*N.J.S.A.* 18A:66–79 likewise requires that these policies "provide that if a member dies during the 31–day period during which he would be entitled to exercise the conversion privilege, the amount of insurance with respect to which he could have exercised the conversion privilege, shall· be paid as a claim under the group policy." This is the backdrop on which the facts of the case must be analyzed.

James McKenna began working for the maintenance department of the Newark Board of Education on May 1, 1946, and was enrolled in the TPAF effective May 1, 1951. As a member of TPAF he was entitled to the previously outlined statutory benefits. During his years in service, McKenna was covered by the full contributory and noncontributory benefit of 3½ times final salary as provided in certain Prudential group insurance policies purchased by the State Treasurer and the Board. Both of the group policies issued by Prudential conform with the previously outlined requirements. They contain a provision which protects a member who dies within the conversion period but has not yet exercised the conversion privilege.

In 1979, McKenna, who was then 53 years old, began to explore the possibility of retirement because of his failing health and submitted a request for a retirement estimate. In late summer and fall of that year, McKenna filed initial and amended applications for disability retirement to be effective on September 1, 1981. In the accompanying disability evaluation he was found totally and permanently disabled because of advanced lung disease. While his disability application was being processed, McKenna submitted a separate application for early retirement to become effective on September 1, 1981.

At its meeting of December 10, 1981, the Board approved McKenna's early retirement effective September 1, 1981. McKenna was informed of the Board's action by letter postmarked December 28, 1981. The letter also informed him that he would have to wait at least 30 days from the date of Board

approval to receive his first retirement check, and that because it had granted early retirement it was unnecessary for the Board to act on McKenna's application for disability retirement. On January 7, 1982, McKenna was advised by TPAF that he had to withdraw his application for ordinary disability retirement in order to receive early retirement benefits. McKenna revoked his request for ordinary disability retirement by letter dated January 11, 1982. On January 22, 1982, he died of lung cancer.

On March 17, 1982, plaintiff received a letter from TPAF explaining that, under the provisions of her husband's early retirement, she would be receiving the balance of the unused reserve, totalling $113,187.99, as well as an insurance benefit of $7,724.20 representing 7/16ths of his final salary. The insurance benefit and the unused reserve were paid in May, 1982.

Thereafter, plaintiff requested that TPAF convert the full amount of her husband's life insurance (3½ times his salary) to an individual policy, posthumously. TPAF's Board denied this request at its meeting of July 14, 1983. Plaintiff then filed an administrative appeal from this denial and simultaneously filed a six-count complaint in the Superior Court, Law Division against the Board, Prudential and the Newark Board of Education, in which she sought the difference between the full benefit of 3½ times salary and the amount actually received (7/16 times salary).[1] The parties have stipulated that the amount in issue is $54,069.35. The complaint contained various theories of recovery including negligence, breach of fiduciary duty and violation of the Consumer Fraud Act. The only count of the complaint which is involved in this appeal is Count One in which plaintiff claimed that she was entitled to the full death benefit

---

[1]The State moved to dismiss the Superior Court action for failure to exhaust administrative remedies. The motion was denied, and the administrative appeal was transferred to the inactive list.

because McKenna had died within the conversion period.[2]

The Board and Prudential argued before the trial judge that McKenna became retired on the date of the Board's approval—December 10, 1981, and that the conversion period expired 31 days later, on January 10, 1982. They urged accordingly that because McKenna failed to exercise the privilege, the Board properly reduced the death benefit to 7/16 final salary. Plaintiff argued that the conversion period did not begin to run until McKenna was notified that the Board had approved his retirement on December 28, 1981; that he had until January 28, 1982 to exercise the privilege; that because he died on January 22, 1982, he died within the conversion period, and that plaintiff was entitled to the amount of insurance McKenna could have converted.

The trial judge agreed with plaintiff. As he noted, the policies state that the member's insurance terminates when he ceases to be "in service." Because *N.J.S.A.* 18A:66–79 uses the language "ceases to be in service or has retired," the judge concluded that McKenna ceased to be in service when he retired and that the retirement was effective upon Board approval. He determined however that it would be unfair to start the conversion period before McKenna actually knew that he was retired and denominated the date of notice as the date of retirement for conversion purposes. In so doing, he rejected the Board's argument to the contrary, and he relied on two New Jersey decisions which follow what is the majority rule on the general subject of insurance conversion clauses. *Keane v. Aetna Life Insurance Co.*, 22 *N.J.Super.* 296 (App.Div.1952); *Wells v. Wilbur B. Driver Co.;* 121 *N.J.Super.* 185 (Law Div.1972).

---

[2]Count Six of the complaint, alleging a violation of the Consumer Fraud Act, was dismissed and the other counts bifurcated. Count One was decided based on stipulated facts without prejudice to plaintiff's right to a trial on the other issues should the judgment be adverse to her.

*Walker v. Occidental Life Insurance Co.*, 67 *Cal*.2d 518, 63 *Cal.Rptr.* 45, 432 *P*.2d 741, 744 (Sup.Ct.1967). *See generally Annot., Group Insurance: Construction, Application, and Effect of Policy Provision Extending Conversion Privilege to Employee After Termination of Employment*, § 9, 32 *A.L.R.* 4th 1037 (1984). The gist of the cases (which involve employees who received no notice of termination) is that conversion is a valuable right and that the employee is entitled to notice of termination of employment before the conversion period begins to run. We think that the judge's reliance on these cases was sensible given the incorporation of New Jersey's insurance statutes into the pension scheme at issue here. In our view, this construction maintains the integrity of the pension scheme while according fundamental fairness to the enrollee.

In essence, three possible "retirement" dates from which the conversion period can be calculated exist in this case: September 1, 1981, to which McKenna's retirement was retroactive; December 10, 1981, the date on which the Board approved his retirement, and December 28, 1981, the date on which McKenna received notice that his retirement had been approved effective September 1, 1981. If September is considered McKenna's retirement date for conversion purposes (a result which is not urged by either party) his right to convert would have expired on October 1, 1981, months before he ever knew of the Board's approval. Under such an interpretation, McKenna's right to convert would simply have been lost to him. This obviously cannot be countenanced. If the December 10, 1981, Board approval date is deemed to be the retirement date, McKenna essentially lost 18 of the 31 days which the statute mandates as necessary for the conversion decision to be made. We see no authority for this approach.

The only fair and sensible analysis of this issue is that of the trial judge: that for conversion purposes, the retirement date is the date upon which the enrollee is notified of Board approval.

Only by this interpretation is the enrollee accorded the full 31–day conversion period regardless of the lateness of the notice. Under the statutory scheme then, McKenna was considered to remain in service for 30 days after the Board's approval of his retirement on December 10, 1981, pursuant to *N.J.S.A.* 18A:66–38 and *N.J.A.C.* 17:3–6.3(a), during which his full in-service benefit of 3½ times final salary was payable.[3] After 30 days, a retirement package based on ⁷/₁₆ times final salary came into effect. However, because the Board failed to notify McKenna that his retirement was approved until December 28, 1981, he still had 31 days from that date to exercise the conversion privilege. He died within that period, thus entitling plaintiff to the amount of insurance which he could have converted. We note that whatever logistical problems are presented to TPAF by this approach can be completely eliminated if Board approval and notice are given simultaneously. This can easily be effected if the Board Secretary prepares approval notices in advance of Board meetings and mails them on the same day.

 Notwithstanding its primary claim as to the inapplicability of insurance law to this issue, the Board argues alternatively that *N.J.S.A.* 17B:27–24 governs. That statute provides:

> If any individual insured under a group life insurance policy hereafter delivered in this State becomes entitled under the terms of such policy to have an individual policy of life insurance issued to him without evidence of insurability, subject to the making of application and payment of the first premium within the period specified in such policy, *and if such individual is not given notice of the existence of such right at least 15 days prior to the expiration*

---

[3] *N.J.A.C.* 17.3–6.3(a) and its statutory source, *N.J.S.A.* 18A:66–38, function to provide a waiting period to prevent deathbed applications seeking unfairly to maximize benefits based on the knowledge of impending death. The Legislature requires a member to survive for 30 days after retirement to insure that the member's choice of benefits is made based only upon statistical probabilities posited upon an unknown date of death. *DeNike v. Board of Trustees, State Employment Ret. Sys.* 62 *N.J.Super.* 280, 300 (App.Div.1960) aff'd 34 *N.J.* 430 (1961).

*date of such period,* then the individual shall have an additional period within which to exercise such right; but nothing herein shall be construed to continue any insurance under the policy beyond the period provided in the policy. Such additional period shall expire 15 days next after the individual is given such notice, but in no event shall such additional period extend beyond 60 days next after the expiration date of the period provided in such policy. Written notice presented to the individual, or mailed by the policyholder to the last known address of the individual, or mailed by the insurer to the last known address of the individual as furnished by the policyholder, shall constitute notice for the purposes hereof. [emphasis added].

We disagree. In order for this statute to apply, we would have to conclude, as the Board apparently has, that notice of termination of employment and notice of the existence of the right to convert are synonymous. They are not. Notice of termination of employment is a fundamental right of the employee without which no benefit affected by such termination can be reduced or forfeited. This is an entirely different concept from notice of the specific options which are available upon termination. In other words, we differentiate between a case in which an employee was not notified of the termination of his or her employment and one in which the employee, although notified of termination, was not specifically advised of rights which could be exercised upon that event. It is in the latter case that we think *N.J.S.A.* 17B:27–24 applies.

If we were to read *N.J.S.A.* 17B:27–24 as the Board suggests, the effect would be that in a case in which the Board failed completely to notify the enrollee of retirement, the enrollee's right to convert would nevertheless expire 60 days after he was no longer in service. That cannot be the meaning of the statute. In our view, the statute applies in the situation where an employee has been notified of termination but not of the right to convert. In that instance, the statute essentially places the burden on the employee who knows he has been terminated, or his retirement approved, to ascertain, within a prescribed period, what his rights are.

Affirmed.