[No. 47189-9-I. Division One. January 14, 2002.]

EVA MADER, ET AL., *Appellants*, v. THE HEALTH CARE AUTHORITY, ET AL., *Respondents*.

*Stephen K. Strong* and *Stephen K. Festor* (of *Bendich, Stobaugh & Strong, P.C.*), for appellants.

*Christine O. Gregoire, Attorney General,* and *Derek L. Edwards, Assistant,* and *Melissa A. Burke-Cain, Senior Counsel,* for respondents.

Cox, J. — Two community college instructors appeal a portion of the superior court's order on a petition for judicial review of an administrative decision by the Health Care Authority (HCA). The HCA denied the instructors' claim for employer contributions to the premiums for their health care coverage during the 1999 summer quarter. On review, the court certified a class of instructors that includes the two instructors who initiated the proceedings in the HCA. The court then affirmed the HCA on different grounds. It held that instructors who do not work during summer quarters are not entitled to the employer contribution because they were not State employees during that time. The court made additional rulings with respect to other members of the class, which we will discuss later in this opinion.

We hold that part-time instructors who do not sign contracts and do not work during the summer quarter are not employees of the State during that period. Thus, they are not entitled to employer contributions to the premiums for employee health benefits during that time, and we affirm the trial court to that extent.

We also hold that the trial court exceeded the scope of its authority by concluding that part-time instructors who sign summer quarter contracts are entitled to employer contributions to the premiums for employee health benefits during that period. We conclude that the trial court similarly acted beyond the scope of its authority by retaining jurisdiction over part-time instructors who work on other than a quarterly basis. Accordingly, we reverse those parts of the court's decision.

In light of this disposition, we need not reach the State's argument that Eva Mader and Teresa Knudsen lack standing to represent part-time instructors who sign summer quarter contracts and those who work on other than a

quarterly basis. Nor do we address the State's argument that those instructors failed to exhaust their administrative remedies in this case.

Eva Mader has been a part-time German instructor at North Seattle Community College for more than 20 years. The college employs her on a quarter-to-quarter basis. Teresa Knudsen (f/k/a Boyden) has been a part-time English and writing instructor at the Community Colleges of Spokane for more than 10 years. They also employ her on a quarter-to-quarter basis.

A full-time workload in each instructor's discipline is 15 credits in any given quarter, which typically involves teaching three classes. Mader has consistently worked more than half of a full-time workload during the fall, winter, and spring quarters. But she has never taught during the summer quarters.

Knudsen similarly works more than half of a full-time workload during the fall, winter, and spring quarters. She has taught during some summer academic quarters, but not in the summer of 1999.

It appears that Mader and Knudsen have had health benefits coverage throughout. During the fall, winter, and spring quarters, their colleges paid the employer contribution to the premiums for employee coverage. However, these instructors have paid their own premiums for coverage during the summer quarters when they did not work for the colleges.

In December 1998, Mader and Knudsen commenced proceedings in which they sought a determination as to whether they were eligible for employer contributions to the premiums for their health benefits during "the summer months." The Deputy Program Manager of the Public Employees Benefits Board Programs within the HCA determined that Mader and Knudsen were ineligible for such contributions during that time. Mader and Knudsen appealed to the agency administrator, asking that the HCA "determine and clarify their eligibility for state-paid health

benefits during the summer months or 'off season.' "[1] The State Board for Community and Technical Colleges (the Board) intervened as a party to the administrative proceedings.

Thereafter, the HCA issued a decision denying Mader and Knudsen employer contributions for their health care coverage during the 1999 summer quarter.[2] The HCA concluded that they were ineligible for the contribution because they did not teach at least 50 percent of a full-time workload during the 1999 summer quarter. As they had done in the past, Mader and Knudsen each paid their own premiums to maintain coverage for that quarter.[3]

Mader and Knudsen sought judicial review, and the trial court certified the appeal as a class action. In its subsequent decision, the trial court identified three separate groups within the certified class, and either determined their eligibility for benefits or retained the jurisdiction to do so.

The first subgroup consists of those part-time instructors who do not teach and do not sign a contract for the summer quarter. Mader and Knudsen were within this subgroup during the 1999 summer quarter. The trial court affirmed the HCA's decision to the extent that it denied employer-paid health benefits to this group. In doing so, it rejected the HCA's reasoning, but affirmed on the alternative ground that instructors who do not sign a contract and work in the summer quarter are not employees of the State during that period. Because they are not employees, the court concluded, they are not entitled to have the State pay premiums for their benefits.

The second subgroup consists of those part-time instructors who sign a contract to teach during the summer quarter, but are denied benefits because they are considered to work less than half of a full-time workload. The trial

---

[1] Certified Appeal Board R. at 10.

[2] Certified Appeal Board R. at 396.

[3] Certified Appeal Board R. at 18, 344, and 352.

court reversed the HCA's decision to the extent that it denied employer contributions to these instructors.

The third subgroup consists of part-time instructors who work on other than a quarterly basis and who do not receive employer-paid health benefits during the summer quarter. Because the parties did not address this group in their briefs, the trial court retained jurisdiction to determine the eligibility of these instructors in later proceedings.

Mader and Knudsen appeal from that portion of the trial court's order denying employer contributions to the premiums for health benefits for part-time instructors who neither sign quarterly contracts nor work during the summer. We granted the motion for discretionary review of the HCA and the Board (collectively "the State") to address the trial court's determinations as to the two remaining groups within the certified class: those who sign quarterly contracts in the summer and do not work, and those who work on other than a quarterly basis.[4]

## Eligibility for Employer Contribution

Mader and Knudsen argue that the trial court erred by concluding that part-time instructors who neither sign contracts nor work during the summer quarter are ineligible for employer contributions to premiums for employee health benefits during that period. They maintain that the decisions of the HCA and the trial court conflict with the statutes and regulations governing health benefits for part-time community college instructors. They also argue that the decisions are inconsistent with the colleges' position that part-time instructors who do not teach during the summer are ineligible for unemployment benefits. We reject both arguments.

We first address a threshold issue. A theme that underlies the arguments of Mader and Knudsen is that the decisions

---

[4] Mader and Knudsen have filed a "Motion to Strike New Arguments in Reply Brief" and a "Motion to Strike New and Untimely Argument in Cross-Appeal." Because they have not shown that our consideration of these issues will prejudice them, we deny both motions. *See* RAP 1.2(a).

that we review are unfair to part-time instructors because they treat such instructors differently from others. But the fairness of the legislative scheme before us is a matter for the Legislature to decide, not this court. There being no constitutional challenge to the laws at issue here and no other extraordinary showing, our tasks are limited to construing the governing statutes and regulations and applying them to the situations of those individuals properly before us.

When reviewing an administrative action, we sit in the same position as the trial court and apply the standards of the Administrative Procedure Act (APA) directly to the record before the agency.[5] We will grant relief from an administrative decision if the agency erroneously interpreted or applied the law, there is not substantial evidence to support the decision, or the decision was arbitrary or capricious.[6] The burden of proving that the agency action was invalid for any of these reasons lies with the party challenging the action.[7] We review de novo the trial court's legal conclusion that part-time instructors who neither sign contracts nor work during the summer quarter are ineligible for the employer contribution to the premiums for health benefits during that time because they are not then employees of the State.[8]

Turning to the decision of the trial court, it is undisputed that neither Mader nor Knudsen signed contracts or taught during the 1999 summer quarter. It is equally undisputed that Mader's contract with North Seattle Community College expressly states that hers is a *"part-time,* temporary position, non-tenure track. Benefits applicable with 50% or greater workload starting with the second consecutive

---

[5] *Tapper v. Employment Sec. Dep't,* 122 Wn.2d 397, 402, 858 P.2d 494 (1993) (citing *Macey v. Dep't of Employment Sec.,* 110 Wn.2d 308, 752 P.2d 372 (1988)).

[6] RCW 34.05.570(3).

[7] RCW 50.32.150; RCW 34.05.570(1)(a).

[8] *Bishop v. Miche,* 137 Wn.2d 518, 523, 973 P.2d 465 (1999) (appellate court reviews conclusion of law de novo).

quarter."[9] Both instructors appear to acknowledge that they are "part-time" employees under governing statutes and regulations. They nevertheless argue that they are also "career seasonal employees"[10] and "academic employees"[11] and thus entitled to employer contributions under the law.

### Career Seasonal Employees

■■ Mader and Knudsen first argue that they are "career seasonal employees" and are simply on vacation during their summer "off-season." They assert that they are entitled to employer contributions to their health insurance premiums during this summer "off-season" under chapter 41.05 RCW and WAC 182-12-115. We hold that they are not career seasonal employees and are therefore ineligible for the employer contribution under the statute and regulation.

The Legislature enacted chapter 41.05 RCW to develop "health care benefit programs, funded to the fullest extent possible by the employer, that provide comprehensive health care for eligible state employees."[12] RCW 41.05-.011(6) defines "employee" as including "all full-time and *career seasonal employees* of the state . . . *and includes any or all part-time and temporary employees under the terms and conditions established under [chapter 41.05 RCW] by the [HCA]*."[13]

The HCA promulgated WAC 182-12-115 as an implementing regulation for chapter 41.05 RCW. The regulation defines various categories of state employees and further defines eligibility for the employer contribution for health coverage. More specifically, WAC 182-12-115 states:

> **Eligible employees.** The following employees of state government, higher education, K-12 school districts, educational

---

[9] Certified Appeal Board R. at 185 (emphasis added).

[10] RCW 41.05.011(6); WAC 182-12-115(4).

[11] RCW 28B.50.489.

[12] RCW 41.05.006(2).

[13] (Emphasis added.)

service districts, political subdivisions and employee organizations representing state civil service workers are eligible to apply for coverage by PEBB plans. For purposes of defining eligible employees of school districts, and educational service districts, the collective bargaining agreement will supersede all definitions provided under this rule if approved by the PEBB and/or the HCA.

. . . .

(4) "Career seasonal/instructional employees." Employees who work half-time or more on an instructional year (school year) or equivalent nine-month seasonal basis. Coverage begins on the first day of the month following the date of employment. If the date of employment is the first working day of the month, coverage begins on the date of employment. These employees are eligible to receive the employer contribution for insurance during the off-season following each period of seasonal employment.

(5) "Part-time faculty." Faculty who are employed on a quarter/semester to quarter/semester basis become eligible to apply for coverage beginning with the second consecutive quarter/semester of half-time or more employment at one or more state institutions of higher education. Coverage begins on the first day of the month following the beginning of the second quarter/semester of half-time or more employment. If the first day of the second consecutive quarter/semester is the first working day of the month, coverage begins at the beginning of the second consecutive quarter/semester.

Focusing on WAC 182-12-115(4), Mader and Knudsen argue that they qualify as career seasonal/instructional employees because they have worked for their respective colleges on a nine-month "instructional year (school year)" or "equivalent nine-month seasonal" basis for years. Based on that premise, and the further premise that summer quarters are "the off-season[s] following each period of seasonal employment," they contend that they are eligible for employer contributions for health insurance premiums under the regulation. Their argument is refuted by the factual record and a plain reading of WAC 182-12-115(4) and (5).

The HCA's factual finding, which is uncontested on appeal, was that both Mader and Knudsen are adjunct faculty employed on a quarter to quarter basis.[14] Substantial evidence supports that finding. Mader has worked as a part-time instructor in the Seattle Community College District since 1978. Her Spring 1999 contract with the college specifically states that hers "is a *part-time*, temporary position."[15] She signs a contract each quarter that she works. Because she does not contend otherwise, we presume each of her contracts contains substantially similar wording to the contract that is in the record. Knudsen has taught on a part-time basis for the community colleges of Spokane since 1984. She, too, signs a contract for each quarter that she works.

Both instructors work on a quarterly basis. Neither works on a "nine-month seasonal basis." Likewise, neither works on an "equivalent instructional year (school year) basis." Because the record clearly demonstrates that both instructors work on a quarterly basis, not an "instructional year (school year)" or "equivalent nine-month seasonal basis," they are not career seasonal employees.

Moreover, we must read statutes on the same subject matter together, to give each effect and to harmonize each with the other.[16] A plain reading of WAC 182-12-115(4) shows that career seasonal/instructional employees are eligible to receive employer contributions to health insurance premiums during the "off-season" (summer) following their periods of employment. WAC 182-12-115(5), which defines "part-time faculty" as those employed on a "quarter/ semester to quarter/semester basis," does not mention "off-season[s]." The express eligibility of career seasonal/ instructional employees for the employer contribution dur-

[14] Certified Appeal Board R. at 391.

[15] Certified Appeal Board R. at 185 (emphasis added).

[16] *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 542, 951 P.2d 770 (1998) (statutes on the same subject matter must be read together to give each effect and to harmonize each with the other).

ing the "off-season" in section (4) and the omission of the term "off-season" from section (5) is significant. We conclude that the most logical significance is that "part-time faculty," those described in section (5), are not eligible for the employer contribution during the summer, there being no mention of either summer or "off-season" in that section. That reading of the statute best harmonizes section (4) and (5).

Because of the above resolution, we need not reach the State's argument that use of the term "school year" in WAC 182-12-115(4) applies only to K-12 employees and not to higher education faculty.

### Part-Time Employees

■ Relying on WAC 182-12-115(a) and (e), Mader and Knudsen argue in the alternative that part-time employees who do not work for the colleges during summer quarters, like career seasonal/instructional employees, are eligible for employer contributions during summer quarters. We cannot agree with this incorrect reading of the regulation. WAC 182-12-115(5) states in relevant part:

"Part-time faculty." Faculty who are employed on a quarter/semester to quarter/semester basis become eligible to apply for coverage beginning with the second *consecutive* quarter/semester of half-time or more employment at one or more state institutions of higher education. Coverage begins on the first day of the month following the beginning of the second quarter/semester of half-time or more employment. . . .

Employers of part-time faculty must:

(a) Consider spring and fall as *consecutive* quarters/semesters when determining eligibility; and

. . . .

(e) Once enrolled, if a part-time faculty member does not work at least a total of half-time in one or more state institutions of higher education, eligibility for the employer contribution ceases.

Mader and Knudsen claim that part-time faculty are eligible to apply for health benefits at the start of their

second *consecutive* quarter of half-time or more employment. We agree. They then note that subsection (a) of WAC 182-12-115(5) requires employers of part-time faculty to consider spring and fall quarters as *consecutive* for purposes of eligibility for the employer contribution. We also agree with this observation. Based on these points, they argue that subsections (4) and (5)(a) of WAC 182-12-115 "state the summer is the 'off-season' and spring and fall are 'consecutive' quarters for *all* instructors."[17] We disagree with this proposition because it is without any support in the language of the regulation.

A plain reading of these provisions makes clear that these arguments are unsound. Part-time instructors do become eligible to apply for insurance coverage "beginning with the second *consecutive* quarter/semester of half-time or more employment."[18] And coverage for such employees "begins on the first day of the month following the beginning of the second quarter/semester of half-time or more employment."[19] Beyond these two points, the instructors' arguments have no basis in the regulations they cite for support.

For example, as we have already stated in this opinion, subsection (5) of WAC 182-12-115 contains no reference to the term "off-season" that is found in subsection (4) of that regulation. Moreover, the reference to *consecutive* quarters/ semesters in the context of WAC 182-12-115 focuses on part-time faculty, not *all* instructors, as these instructors so forcefully argue. Thus, this attempt to import the employer contribution benefit found in subsection (4) into subsection (5) of WAC 182-12-115 is without support in the plain language of these regulations.

The plain language of these regulations presents further support for our view. The purpose of WAC 182-12-115(5)(a) is simply to ensure that part-time faculty who work more

---

[17] Appellants' Opening Br. at 20.

[18] WAC 182-12-115(5) (emphasis added).

[19] WAC 182-12-115(5).

than half-time during the spring and fall quarters/semesters, but not during the intervening summer period, do not lose their eligibility to apply for coverage "beginning with the [fall] quarter."

WAC 182-12-115(5)(e) is of no more assistance to the arguments of Mader and Knudsen. This subsection plainly states when the eligibility for employer contributions to premiums ceases. It ceases when part-time faculty fail to work more than half-time. The subsection simply does not support any other reading. Accordingly, we reject the instructors' attempt to read into the regulations governing part-time faculty wording that is not there to support their claim to entitlement to employer contributions during summer quarters. Because they did not work during the 1999 summer quarter, they were not entitled to such contributions to premiums for health coverage.

<u>Academic Employees</u>

■■ Mader and Knudsen next maintain that they are "academic employees," as defined by RCW 28B.50.489, during the summer quarter and as such are entitled to benefits. We disagree.

The Legislature enacted RCW 28B.50.489 and 28B.50-.4891 to clarify the eligibility requirements for state-funded benefits for part-time academic employees of community and technical colleges.[20] RCW 28B.50.489(3) defines an "academic employee" as "any teacher, counselor, librarian, or department head *who is employed by a college district*, whether full or part-time."[21] Under RCW 28B.50.4891, certain part-time academic employees at community and technical colleges may be eligible for state-paid benefits.

But, as the unchallenged findings of fact establish, neither Mader nor Knudsen signed a contract to teach during

---

[20] SENATE JOURNAL, 54th Leg., Reg. Sess. 381; Substitute S.B. 6583; LAWS OF 1996, ch. 120 (codified at RCW 28B.50.489 and RCW 28B.50.4891).

[21] (Emphasis added.)

the 1999 summer quarter. Likewise, neither taught during that summer quarter. Because they did not sign a quarterly contract and did not work during the 1999 summer quarter, they were not academic employees during that period.

Mader and Knudsen nevertheless argue that full-time instructors remain employees eligible for the employer contribution to health insurance premiums during the summer quarter whether or not they sign summer quarter contracts. They maintain that part-time instructors should also be eligible for such contributions during the summer without regard to whether they sign contracts.

The simple answer to this argument is that the Legislature has specifically mandated that all full-time and career seasonal employees shall receive employer paid health benefits during the summer.[22] It has not provided a similar mandate as to part-time faculty. Neither RCW 28B.50.489 nor .4891 changes that legislative scheme.

Mader and Knudsen also contend that the trial court's determination that part-time instructors who do not sign a contract and work during the summer quarter are not employees during that quarter defeats the Legislative intent underlying RCW 28B.50.4891. It does no such thing.

The Legislature enacted RCW 28B.50.4891 to "standardize [part-time instructors'] eligibility for benefits and prevent colleges from inflating the definition of a full-time teaching load in order to make it more difficult for part-time faculty to qualify for benefits."[23] The statute accordingly standardizes the way in which colleges must calculate and report a part-time workload, providing that they do so based on in-class teaching hours.[24]

---

[22] RCW 41.05.011(6), .050.

[23] H.B. REP. SSB 6583, at 3 (Wash. 1996).

[24] RCW 28B.50.4891 provides:

For the purposes of determining eligibility for receipt of state-mandated benefits for part-time academic employees at community and technical colleges, each institution shall report to the appropriate agencies the names of eligible part-time academic employees who qualify for benefits based on calculating the hours worked by part-time academic employees as a percentage of the part-time

The trial court simply denied employer contributions to premiums for employee health benefits to individuals who are not employees of the state's community or technical colleges during summer quarter. Its decision does nothing to contradict the Legislature's intent to standardize the laws granting health benefits to part-time instructors who are so employed.

## De Facto Employees

■ Relying next on the case of *Estate of Hagel v. Board of Trustees, Public Employees' Retirement System*,[25] Mader and Knudsen argue that their employment relationship with the colleges continued throughout the summer, and that they are de facto employees during that period. Whatever force that case has in New Jersey, it has none in Washington.

In *Hagel*, the Appellate Division of the New Jersey Superior Court held that a part-time adjunct professor at a community college was an active member of the Public Employees' Retirement System at the time of his death during the summer term, because he was on a de facto leave of absence at that time.[26] Hagel typically taught during the fall, winter, and summer terms, but not during the spring term.[27] As he had in the years before, Hagel taught during the winter 1986 term, did not teach during the spring term, and was scheduled to return to work for the summer term.[28] But before the start of the summer term, he

---

academic workload to the full-time academic workload in a given discipline in a given institution.

RCW 28B.50.489(1), in turn, defines "full-time academic workload" as the "number of in-class teaching hours that a full-time instructor must teach to fulfill his or her employment obligations in a given discipline in a given college."

[25] 226 N.J. Super. 182, 543 A.2d 1010 (1988).

[26] *Estate of Hagel*, 543 A.2d at 1012.

[27] *Estate of Hagel*, 543 A.2d at 1011.

[28] *Estate of Hagel*, 543 A.2d at 1011.

informed the college that he was ill and could not teach the summer course.[29]

The court determined that a de facto employee-employer relationship continued over the summer months. Because the college had notified Hagel "at the end of the winter term that he had a reasonable expectation of teaching his usual courses in the fall term," the court reasoned, his employment carried "with it *de facto* 'active service' insurance protection over the brief hiatus during the spring or spring and summer terms."[30]

Here, we deal with a legislative scheme that defines the extent of benefits to which part-time faculty are entitled. Moreover, unlike the decedent in *Hagel*, neither Mader nor Knudsen was scheduled to teach during the 1999 summer term. And unlike Hagel, neither of them was on a de facto leave of absence from their regularly scheduled teaching duties due to illness. In light of these and other distinctions, *Hagel* simply does not control here.

Mader and Knudsen also rely on *Vittal v. Long Beach Unified School District*,[31] to support their argument that they are de facto permanent employees. But that case is inapposite.

In *Vittal*, the court construed a statute that entitled "temporary" teachers to permanent status if they had served a specified portion of the school year for three consecutive years.[32] The court determined that *Vittal* fell "within the class of teachers intended to be benefited by the statute" and granted her permanent status.[33]

There is no similar statute in Washington. Thus, this case is not helpful in deciding the issues before us.

---

[29] *Estate of Hagel*, 543 A.2d at 1012.

[30] *Estate of Hagel*, 543 A.2d at 1013.

[31] 8 Cal. App. 3d 112, 87 Cal. Rptr. 319 (1970).

[32] *Vittal*, 8 Cal. App. 3d at 120.

[33] *Vittal*, 8 Cal. App. 3d at 120.

Reasonable Assurance of Reemployment

■ Finally, Mader and Knudsen argue that the trial court improperly based its decision on the Board's allegedly inconsistent argument that part-time instructors who do not sign contracts are employed for the purpose of denying unemployment benefits. They misconstrue the Board's argument.

The Board does not argue that part-time instructors who are not under contract for the summer are employed during that period. Rather, it simply points out that such instructors do not qualify for unemployment benefits if they receive an offer of reasonable assurance of reemployment from the college. In fact, the Board correctly argues that such an offer of reasonable assurance is insufficient to establish an employer-employee relationship.

At the close of the 1999 spring quarter, Spokane gave Knudsen "an offer of reasonable assurance" of reemployment for the fall quarter. The fact that she received an offer of reasonable assurance does not mean that the college continued to employ her during the 1999 summer quarter. Although such an offer may prevent an individual from receiving unemployment benefits, it is insufficient to establish an employment relationship.[34] The Legislature's determination that an individual who receives an offer of reasonable assurance is ineligible for unemployment benefits does not necessarily mean that the individual is employed during that period of ineligibility. Accordingly, a determination that part-time instructors who neither sign contracts nor teach during the summer quarter are not employees is not inconsistent with the view that those instructors may not qualify for unemployment benefits under the terms established by the Legislature.

---

[34] *See* WAC 192-210-015(1) (an offer of reasonable assurance "is less than a contract or written agreement, but more than a mere possibility of future employment"); *Jennings v. Employment Sec. Dep't*, 34 Wn. App. 592, 598, 663 P.2d 849, *review denied*, 100 Wn.2d 1022 (1983) (an offer of " 'reasonable assurance' is not the same as a guaranty. The critical question is whether the parties in good faith expect the [] employment relationship to *resume*.").

### Limitation of Issues on Review

The State argues that the trial court exceeded the scope of its authority by making factual findings and ruling on two issues that Mader and Knudsen had not raised before the HCA. First, it asserts that the court improperly ruled on Knudsen's eligibility for health care coverage during the 1996 through 1998 summer quarters at community colleges in Spokane. Second, it argues that the court erred by ruling on the definition of a full-time workload at each of the state's remaining 28 community and college districts. We agree with the first argument, and do not reach the second.

When reviewing an administrative decision, the trial court acts in a limited appellate capacity.[35] An administrative appeal "invoke[s] the appellate, not the general or original, jurisdiction" of the trial court.[36] Subject to certain limited exceptions not applicable here, RCW 34.05.554(1) precludes appellate review of issues not raised below.[37] Our Supreme Court has explained that:

> This rule is more than simply a technical rule of appellate procedure; instead, it serves an important policy purpose in protecting the integrity of administrative decision making. As the District of Columbia Circuit has recognized, rules like RCW 34.05.554 further the purposes of: " '(1) discouraging the frequent and deliberate flouting of administrative processes; (2) protecting agency autonomy by allowing an agency the first opportunity to apply its expertise, exercise its discretion, and correct its errors; (3) aiding judicial review by promoting the development of facts during the administrative proceeding; and (4) promoting judicial economy by reducing duplication, and perhaps even obviating judicial involvement.' "[38]

---

[35] *Union Bay Pres. Coalition v. Cosmos Dev. & Admin. Corp.*, 127 Wn.2d 614, 617, 902 P.2d 1247 (1995); RCW 34.05.558.

[36] *Fay v. N.W. Airlines*, 115 Wn.2d 194, 197, 796 P.2d 412 (1990).

[37] *Bowers v. Pollution Control Hr'gs Bd.*, 103 Wn. App. 587, 597, 13 P.3d 1076 (2000), *review denied*, 144 Wn.2d 1005 (2001) (citing *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 670, 860 P.2d 1024 (1993) ("[T]here must be more than simply a hint or a slight reference to the issue in the record.")).

[38] *King County*, 122 Wn.2d at 668-69 (quoting *Fertilizer Inst. v. United States*

Under RCW 34.05.554(2), the court should remand to the agency any issue that should have been raised before the agency and was not.

## Prior Summers

The State first maintains that the trial court erred by addressing Knudsen's eligibility for benefits during the 1996 through 1998 summer quarters. It argues that the HCA properly restricted its decision to the 1999 summer quarter—during which neither Mader nor Knudsen signed a contract or taught any classes. The State asserts that the trial court exceeded the scope of its authority by looking beyond the 1999 summer quarter and finding that:

> [Knudsen] was not employed during the 1999 summer quarter. However, in the summers of '96, '97, & '98 she taught at least at least [sic] 5 in-class hours per week but was still denied benefits.

The only issue before the HCA when making its final determination was Mader's and Knudsen's eligibility for employer-paid health benefits during the 1999 summer quarter. Mader and Knudsen did not ask that the HCA rule on their eligibility during prior summers, and the HCA clearly did not do so. It is undisputed that neither Mader nor Knudsen signed a contract or taught during the 1999 summer quarter. Accordingly, the eligibility of part-time instructors who do sign summer quarter contracts was not before the HCA.

Mader and Knudsen argue that the HCA did not confine its decision to the 1999 summer, and suggest that the agency's references to that time period were merely illustrative. But the text of the HCA's decision clearly indicates otherwise. The agency expressly identified the issue before it as whether Mader and Knudsen were "entitled to employer contribution on their group health coverage during

*Envtl. Prot. Agency*, 935 F.2d 1303, 1312-13 (D.C. Cir. 1991) (quoting *Cutler v. Hayes*, 818 F.2d 879, 890-91 (D.C. Cir. 1987))).

the summer quarter 1999."[39] It limited its decision accordingly, and concluded only that they were not eligible for employer contributions for group health coverage during the 1999 summer quarter.

Thus, the HCA did not rule on the eligibility of part-time instructors who sign summer contracts but are nevertheless denied benefits because they are considered to work less than half of a full-time workload. Because the agency did not adjudicate the eligibility of such individuals, the trial court exceeded the scope of its authority by doing so and granting benefits to the second subgroup.

The State also argues that the court erred by retaining jurisdiction over another group of instructors whose eligibility for benefits was not before the HCA—those who work on other than a quarterly basis. Again, it is undisputed that Mader and Knudsen worked on a quarterly basis. Because the eligibility of employees hired on other than a quarterly basis was not before the HCA, the trial court acted beyond its authority by retaining the jurisdiction to determine their eligibility.

## Other Matters

### Definition of Full-Time Workload

The State also argues that the trial court lacked the authority to find that the summer workload for full-time instructors at all of the State's community and technical colleges is zero hours. The trial court determined that members of the second subgroup are "entitled to health benefits in the summer because they are employees of the State in the summer and, pursuant to RCW 28B.50.4891, they do not work less than half of full-time instructors' summer workload (zero hours)." The State maintains that the trial court usurped the discretion of the HCA in making this determination, and improperly did so "without review-

---

[39] Certified Appeal Board R. at 391.

ing the collectively bargained definitions of a full-time workload at the state's remaining 28 college districts."

The court's finding relates only to members of the second subgroup—those instructors who sign summer quarter contracts and work during the summer quarter. Because we hold that the trial court exceeded its authority by concluding that such instructors are entitled to employer-paid health benefits, the finding is moot and we need not determine whether substantial evidence supports it.

The State also challenges a number of other factual findings made by the court. For example, it maintains that the court usurped the discretion of the HCA by finding that all colleges have a "drastically reduced" summer quarter with "significantly" lower enrollment. In view of our decision concerning the limitations on the scope of the trial court's authority on review of the HCA's decision, the findings and the challenges to them are now moot. We need not deal with them any further.

### Calculating Eligibility

Mader and Knudsen also argue that the HCA erred by concluding that part-time instructors do not qualify for employer-paid health benefits during the summer quarter unless they work one-half of the hours that full-time instructors must teach during the fall, winter, and spring quarters. We need not reach this issue, and decline to do so.

Relying on WAC 182-12-115(5), RCW 28B.50.489, and RCW 28B.50.4891, Mader and Knudsen assert that employers must calculate the eligibility of part-time instructors for employer-paid benefits during the summer based on the obligated summer workload of full-time instructors. Because full-time instructors are not obligated to work during the summer quarter, they assert, part-time instructors need not teach any hours during the summer to be eligible for employer-paid benefits during the summer.

The State, in contrast, argues that part-time instructors must teach at least 7.5 hours, or at least half of the hours that full-time instructors must teach during the fall, winter,

and spring quarters, to meet the half-time or more employment threshold for employer-paid health benefit eligibility. It maintains that RCW 28B.50.4891 does not alter WAC 182-12-115(5), but only standardizes the way in which colleges must calculate a half-time workload.

Because the eligibility of part-time instructors who sign summer quarter contracts or work on other than a quarterly basis was not before the HCA, we do not address these arguments. Specifically, we do not reach the question of whether part-time instructors who sign summer quarter contracts but work less than half the hours that full-time instructors must teach during the fall, winter and spring quarters are eligible for employer-paid health benefits during the summer. Nor do we reach the question of whether part-time instructors who work on other than a quarterly basis are eligible for employer-paid health benefits during the summer.

## Summary

 In sum, we affirm the trial court's decision to the extent that it denied employer contributions to the premiums for employee health benefits to part-time instructors who do not sign a contract and do not work during the summer quarter. Such part-time faculty are not employees of the State during that period. The trial court exceeded its authority under the APA by concluding that part-time instructors who sign a summer quarter contract but do not work are entitled to employer-paid benefits during that period. Thus, we reverse that part of the decision below. We also hold that the trial court exceeded the scope of the authority by retaining jurisdiction over part-time instructors who work on other than a quarterly basis, a decision we also reverse.

We affirm in part, reverse in part, and remand for further proceedings that are not inconsistent with this opinion.

AGID, C.J., and GROSSE, J., concur.

Review granted at 146 Wn.2d 1021 (2002).