ELIZABETH R. STEINMANN, APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, TEACHERS' PENSION AND ANNUITY FUND, RESPONDENT.

Argued February 14, 1989—Decided August 7, 1989.

*Samuel J. Halpern* argued the cause for appellant.

*Patrice M. Connell,* Deputy Attorney General, argued the cause for respondent (*Donald R. Belsole,* Acting Attorney General of New Jersey, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Roseann A. Finn,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

STEIN, Justice.

Although the underlying chronology and regulatory context of this case are somewhat complex, the critical issue is simple: whether appellant has shown good cause to change her disability pension to a more favorable pension benefit based on service rather than disability.

Mrs. Steinmann was entitled to an early retirement pension of $752.93 per month based on over twenty-five years of service as a teacher. Because she sustained a job-related injury in 1981, she was eligible to apply, alternatively, for a disability retirement benefit. She was not adequately informed by the Board of Trustees of the Teachers' Pension and Annuity Fund (Board or TPAF), however, of the possibility that her disability pension benefit, reduced by her ultimate workers' compensation award, could be less than her early-retirement pension. When she eventually learned that her net disability pension would be $193 per month less than her service pension, she requested permission to change her pension selection. This request was denied for the reason that "once a retirement has become effective no change * * * is possible."

On review, an administrative law judge determined that Mrs. Steinmann had shown the requisite "good cause" and "reasonable diligence" to reopen her pension designation. The ALJ found that Mrs. Steinmann had been treated unfairly by the Board and had received inadequate and incomplete information about the effect of a workers' compensation award on her various retirement options. The Board subsequently rejected the ALJ's recommendation, finding that Mrs. Steinmann pos-

sessed sufficient knowledge about the effect of a workers' compensation award on her retirement plan at the time she initially applied for retirement benefits.

The Appellate Division affirmed, finding "substantial credible evidence" on the record to support the Board's conclusions. 235 N.J.Super. 356. Judge O'Brien dissented, agreeing with the ALJ that Mrs. Steinmann should be permitted to convert from ordinary disability to early retirement, and disagreeing with the majority that the Board's findings were supported by substantial credible evidence. We reverse.

## I.

Elizabeth R. Steinmann was a schoolteacher for more than twenty-five years in the Newark and Wayne school systems. On April 3, 1981, she fell while teaching a class and suffered injuries that led to her retirement. She had accumulated over twenty-five years of creditable service in the Teachers' Pension and Annuity Fund when she filed an application for accidental-disability retirement on January 31, 1983.

Appellant's claim may be understood only in the context of the retirement options then available to her. On the one hand, public employees may select retirement plans based solely on age and service. "Service" retirement is available to any employee at age sixty regardless of years in service. It is determined by dividing years of service by age and multiplying that number by a retiree's "final average salary" for the last three years of her employment.[1] "Early retirement" is available to employees who have established twenty-five years or more of creditable service before age sixty.[2] "Deferred retire-

---

[1] The relevant statutory and administrative provisions are *N.J.S.A.* 18A:66–15, –43, and –44; *N.J.A.C.* 17:3–6.12, –6.20, and –6.27.

[2] The age of the applicant is significant only with respect to the amount of benefits granted to retirees under fifty-five years of age based on a statutory "reduction factor." *See N.J.S.A.* 18A:66–37 and *N.J.A.C.* 17:3–6.11.

ment," like "service" retirement, is related solely to age and years of service and is available to employees under sixty years of age with at least ten years of service. Deferred retirees may discontinue their employment and delay receipt of benefits until reaching sixty years of age.[3]

Distinct from these retirement plans based on age and service is a system that compensates disabled employees. Disabled retirees receive a certain percentage of their final average salary payable as long as they remain disabled. "Ordinary disability" retirement is available to retirees under sixty years of age with ten or more years of credited service who are considered "totally and permanently disabled." [4] "Accidental disability" retirement, by comparison, is available to retirees under sixty-five years old who are considered "totally and permanently disabled" as a direct result of a "traumatic event" that occurred in the course of the performance of regular employment duties.[5] Those who qualify for accidental disability receive benefits equal to two-thirds of the salary received on the date of the accident. *N.J.S.A.* 18A:66–42. At a minimum, ordinary disability retirees receive 40% of their final compensation. *N.J.S.A.* 18A:66–41(b).

Since 1971 public employees receiving workers' compensation benefits are also entitled to receive retirement benefits.[6] However, workers' compensation awards result in a reduction of the

---

[3]The relevant provisions are *N.J.S.A.* 18A:66–36 and *N.J.A.C.* 17:3–2.7.

[4]*See N.J.S.A.* 18A:66–41; *N.J.A.C.* 17:1–4.29 and 17:3–6.10.

[5]*See N.J.S.A.* 18A:66–39 and –42; *N.J.A.C.* 17:1–4.29; 17:3–1.10, and 17:3–6.7 to –6.10. *See Ciecwisz v. Board of Trustees,* 113 *N.J.* 180 (1988); *Maynard v. Board of Trustees,* 113 *N.J.* 169 (1988); *Kane v. Board of Trustees,* 100 *N.J.* 651, 498 *A.2d* 1252 (1985); and *Cattani v. Board of Trustees,* 69 *N.J.* 578 (1976).

[6]*See L.*1971, *c.*121 (codified as amended at *N.J.S.A.* 18A:66–1 to –53.3); *L.*1971, *c.*175 (codified as amended at *N.J.S.A.* 43:16A–1 to –15.4); and *L.*1971, *c.*213 (codified as amended at *N.J.S.A.* 43:15A–6 to –134).

benefits received by disabled retirees. *N.J.S.A.* 18A:66–32.[7]
This reduction does not apply, however, to retirement benefits
awarded solely on the basis of age and service. *See Starkey v.
Department of Treasury*, 183 *N.J.Super.* 1 (App.Div.), certif.
denied, 91 *N.J.* 190 (1982) (as a matter of statutory construc-
tion, retirement based on age and service, unlike disability
retirement, is not subject to workers' compensation offset).

Thus, when Mrs. Steinmann realized in January 1983 that she
was permanently disabled, she had certain available options.
Without regard to her job-related disability, Mrs. Steinmann
was eligible for early or deferred retirement based on her
twenty-five years of service as a teacher. Alternatively, she
could have applied, as she did, for accidental-disability benefits;
if rejected, she could qualify for ordinary-disability benefits.
However, as noted above, accidental- or ordinary-disability ben-
efits are reduced by a workers' compensation award, and thus
calculation of a disability-retiree's ultimate award must await
adjudication of the workers' compensation claim.

In order for Mrs. Steinmann to have made an informed choice
concerning her retirement benefits in January 1983, the follow-
ing information would have been material: the amount of age
and service-related benefits to which she was entitled; the
amount of accidental- or ordinary-disability benefits to which
she was entitled; which, if any, of the above are offset by a
workers' compensation award; the amount of the compensation

---

[7]*N.J.S.A.* 18A:66–32.1(b) provides in relevant part:

> An application for retirement benefits may be approved by the board of
> trustees while the member, applying for such benefits, is in receipt of
> periodic benefits under the workmen's compensation law. In this event
> the actuarial equivalent of such periodic benefits remaining to be paid
> shall be computed and will serve to reduce the pension portion of the
> retirement allowance payable to the retirant * * *.

See also *N.J.A.C.* 17:1–4.32(a) ("In the event the Division receives, subsequent
to the date a member has retired, a confirmation that he is in receipt of
periodic Workers' Compensation benefits, his allowance shall be reduced.").

award; *and* the method of calculating such an offset, if applicable.

When Mrs. Steinmann filed her application for accidental disability in 1983, she referred to a booklet entitled *Teachers' Retirement in New Jersey*, published by the Division of Pensions, which reflected conditions in effect on July 1, 1973. This booklet states that one should

> understand that if he is receiving periodic benefits under Workmen's Compensation, the actuarial equivalent of such benefits remaining to be paid will reduce the pension portion of his allowance.[8]

The booklet that she consulted—the only booklet then available—made no distinction between age/service benefits and disability benefits. Nor did the booklet contain any explanation about how the reduction for workers' compensation was to be calculated.

Subsequent to oral argument, the Court requested counsel for the Board to inform it concerning the method of calculating the workers' compensation award offset. Counsel has provided to the Court a copy of a form entitled "Workmen's Compensation Actuarial Reduction Worksheet," which it describes as the worksheet "employed to calculate the amount of reduction necessitated by a workers' compensation award." Letter from Deputy Attorney General Connel, Mar. 3, 1989. (The worksheet is reproduced as Appendix A to this opinion.) The worksheet does not appear in the booklets on Teachers Retirement published by the Division of Pensions, nor is the method of calculation described in any regulations adopted by the Board. The calculation contemplated by the worksheet requires use of

---

[8]This booklet was amended in 1983 and again in 1987. The parallel provisions in the latter booklets indicate, in light of the Appellate Division's opinion in *Starkey, supra,* 183 *N.J.Super.* 1, that disability retirements only are subject to reduction by workers' compensation awards. The 1983 booklet states that "the actuarial equivalent of [workers' compensation] benefits remaining to be paid will reduce the pension portion of your *disability* retirement allowance." (emphasis added.) The 1987 booklet states that "[i]f you are receiving workers' compensation, any *disability* retirement benefit will be adjusted accordingly." (emphasis added.)

a "single life annuity factor," which counsel indicates is provided by the Board's actuary on the basis of "age, life expectancy and kind of retirement benefit." Thus, even if a retiree knew the amount of his or her workers' compensation award, calculation of the offset would be virtually impossible for the average public employee.

In January 1983, when Mrs. Steinmann first filed her application for accidental disability benefits, the Board was aware that she had been receiving workers' compensation benefits, and was awaiting disposition of a pending petition for further benefits. Presumably, the Board could have ascertained from her application that she was also eligible for early retirement benefits. In December 1983, the Board denied appellant's accidental-disability application; simultaneously, it granted Mrs. Steinmann ordinary-disability benefits based on her permanent and total disabilities. The Board also informed Mrs. Steinmann of the right to amend her retirement option, but only if she acted within thirty days. She was not specifically informed either that ordinary disability benefits would be subject to an offset by a workers' compensation award or that she could convert to early retirement and thereby avoid any offset.

In February 1984, the Board informed appellant of her exact monthly allowance under the maximum ordinary-disability option, and informed her for the first time that ordinary-disability retirement could be subject to reduction by a workers' compensation award:

> Please note that if you are receiving any periodic Worker's Compensation payments after the effective date of your retirement, your retirement allowance could be subject to a reduction. You must advise this office if and when you receive any Worker's Compensation Benefits.[9]

---

[9]On February 18, 1984, Mrs. Steinmann applied to convert her ordinary-disability award from Option I to maximum. On March 1, 1984, the Board approved her request. "Maximum" payments terminate at death. Under Option I, a reserve based on life expectancy is set aside; if the retiree dies before collecting the full proceeds of the reserve, the balance is paid to the

On July 10, 1984, Mrs. Steinmann's workers' compensation claim was adjudicated. She was awarded 38-1/7 weeks of temporary disability and 225 weeks of permanent disability at the rate of $846.00. By letter dated July 20, 1984, she advised the Board of this award, but received no response.

In January 1985, Mrs. Steinmann wrote the Board to confirm her understanding about offset. She stated, "It is my understanding that my ordinary disability pension is not subject to any offset. If I am not correct in this matter please change my pension to years in service [early retirement] * * *."

In September 1985, the Division of Pensions advised Mrs. Steinmann that her monthly ordinary-disability benefit would be reduced commencing November 1, 1985, from $908.57 to $559.88, as a result of an offset reflecting the workers' compensation award. For the first time since she applied for retirement benefits, Mrs. Steinmann realized that she would be entitled to $193 per month more under an earned early-retirement benefit than she would receive from her ordinary-disability benefit offset by her workers' compensation award. Accordingly, in November 1985, Mrs. Steinmann asked the Board to convert her benefits from ordinary disability to early retirement. In January 1986, the Board denied her request because "once a retirement has become effective no change * * * is possible."

Appellant sought review of the Board's ruling. An ALJ determined that Mrs. Steinmann had established the requisite "good cause" and "reasonable diligence" to reopen her pension. *See Duvin v. State*, 76 *N.J.* 203, 207 (1978). The ALJ found that Mrs. Steinmann had been treated unfairly by the Board because she never had been adequately informed about her retirement options. Appellant testified before the ALJ that if adequately informed, she would have chosen early retirement

retiree's designated beneficiary. *N.J.S.A.* 18A:66–47; *N.J.A.C.* 17:3–6.18 and –6.19.

instead of ordinary-disability retirement. She also stated that she knew workers' compensation benefits would be offset against the accidental disability benefits for which she had applied, but did not know that they would be offset against ordinary-disability benefits. The ALJ found Mrs. Steinmann's testimony to be credible. She was the only witness to testify at the hearing.

The Board rejected the ALJ's recommendations and denied petitioner's conversion request. The Board concluded that appellant knew about the effect of a workers' compensation award at or about the time she accepted ordinary-disability retirement. It also determined that it had no obligation at that time to inform her of the early retirement plan option.

The Appellate Division majority affirmed the Board's ruling. Petitioner appeals as of right on the basis of the dissent below. *R.* 2:2–1(a).

## II.

This Court has acknowledged the importance of construing the extensive statutory and regulatory scheme relating to pensions fairly, with due regard to the significant interests of public employees:

> Pensions for public employees serve a public purpose. A primary objective in establishing them is to induce able persons to enter and remain in public employment, and to render faithful and efficient service while so employed. They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character, statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby. [*Geller v. Department of the Treasury,* 53 *N.J.* 591, 597–98 (1969) (citation omitted) (emphasis added).]

*Estate of Hagel v. Board of Trustees,* 226 *N.J.Super.* 182, 186 (App.Div.1988); *see also Fiola v. Department of the Treasury,* 193 *N.J.Super.* 340, 347 (App.Div.1984) ("It is virtually axiomatic that statutory pension provisions are to be liberally construed in favor of public employees and that pensions represent not merely the gratuity of a benevolent governmental employer but rather that they constitute deferred compensation earned by

the employee during his years of service. Forfeiture of earned pension rights, therefore, constitutes a drastic penalty which the New Jersey Supreme Court has become increasingly loath to permit even in the case of employee misconduct unless that penalty has been clearly mandated by the Legislature.") (citations omitted); *cf. Zigmont v. Board of Trustees*, 91 *N.J.* 580, 583 (1982) ("[t]he public pension systems are bound up in the public interest and provide public employees significant rights which are deserving of conscientious protection.").

It is well established that the Board may honor a pensioner's request to reopen her retirement selection after it is due and payable if a showing of good cause, reasonable grounds, and reasonable diligence has been made. *Duvin v. State*, 76 *N.J.* 203, 207; *see Geller v. Department of the Treasury, supra*, 53 *N.J.* 591; *Fiola v. Department of the Treasury, supra*, 193 *N.J.Super.* 340; *Smith v. Consolidated Police & Firemen's Pension Fund Comm'n*, 149 *N.J.Super.* 229 (App.Div.), certif. denied, 75 *N.J.* 8 (1977).

Although *Geller* and *Fiola* do not explicitly enunciate the "good cause" standards established in *Duvin*, they support the principle that a pensioner may alter her retirement plan if she demonstrates adequate grounds. In *Geller, supra*, 53 *N.J.* 591, a teacher who overstayed her maternity leave by four months sought to receive full credit for prior teaching service. She wrote the Board a letter authorizing it to make appropriate increased deductions from her pay. The Board never complied nor did it satisfactorily explain its failure to do so. This Court held that "[i]n light of the Board's expertise in such matters and Mrs. Geller's inexperience, * * * if the Board was not clear as to her authorization it should have said so and sought clarification." *Id.* at 600. We ordered that she be restored to the position in which she would have been had the deductions been made as authorized. *Ibid.*

In *Fiola, supra*, 193 *N.J.Super.* 340, a retired fireman filed for deferred retirement benefits after the deadline. The Board

of Trustees of the Police and Firemen's Retirement System (PFRS) denied his application, relying on a notice it had sent him when he retired. The notice informed Fiola that he could apply for withdrawal of his pension contributions. The notice also stated that the recipient must give immediate notification if he wishes to select a retirement plan. No application for a deferred retirement was included, nor was the fireman advised that failing to apply for early retirement within two years would constitute an absolute bar to receipt of benefits. *Id.* at 351. The court concluded that the PFRS notice did not constitute fair dealing with Fiola and other members of the pension system because the documents were ambiguous and designed to encourage withdrawal: "The notice was, at best, ambiguous. We do not think it behooves the system to act antagonistically to the best interests of its members." *Ibid.* Thus, the court reversed the Board's refusal to consider Fiola's early retirement application, which was filed seven years after his separation from service. *Ibid.*

### III.

In deciding that Mrs. Steinmann had not shown "good cause" sufficient to permit her to change her retirement designation, the Appellate Division majority focused solely on whether the record supported the Board's conclusion that when petitioner applied for disability benefits, she knew that an ordinary-disability pension was subject to reduction by a workers' compensation award. That focus too narrowly circumscribes the "good cause" standard we adopted in *Duvin, supra,* 76 *N.J.* 203, particularly in the context of the Legislature's intention to provide public retirees with a variety of options in selecting a retirement-benefit plan.

It is highly unlikely that the Legislature would offer public employees the option of selecting among various service retirement benefits and disability benefits without intending that a retiree be able to make an informed choice about which benefit

would be most advantageous. Since 1971 the Legislature has permitted retirees to choose among these alternative benefit plans while receiving workers' compensation benefits, see, *e.g.*, *L.*1971, *c.*121, § 16 (codified at *N.J.S.A.* 18A:66–32.1b), subject to an offset in the case of disability benefits. A review of the statutory benefit plans authorized by the Legislature reflects a clear purpose to afford public employees a wide array of reasonable retirement options consistent with their personal circumstances. It is self-evident that the Legislature assumed that public employees would be in a position to make informed decisions about the relative merits of their retirement options.

As the record in this case so clearly demonstrates, appellant could not make an informed choice about her retirement options until she knew the amount of her workers' compensation award *and* until the Board's actuary calculated the amount of the offset, even if she knew there would be such an offset. It is obvious that Mrs. Steinmann would not have elected to receive an ordinary-disability benefit if she knew that her early retirement-benefit would be substantially greater. However, she was compelled by the Board's regulations to make a binding election among her retirement options before she could determine which option was in her best interest. See *N.J.A.C.* 17:3–6.2 (application for retirement cannot be changed after retirement allowance becomes due and payable).

Although this appeal does not directly concern the validity of the Board's regulations, it is well-settled that "[a]dministrative regulations * * * cannot alter the terms of a legislative enactment or frustrate the policy embodied in the statute." *New Jersey Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n*, 82 *N.J.* 57, 82 (1980). In the face of the Legislature's clearly-expressed intention to afford a wide range of retirement options to public employees, including those eligible for workers' compensation benefits, the Board's procedures, as applied to employees situated similarly to Mrs. Steinmann, would appear to disserve the legislative purpose.

Under these circumstances, it is clear that the Board was too restrictive in its determination that petitioner failed to show "good cause" to change her retirement benefit. In the Board's view, the good-cause issue was resolved by its finding that petitioner knew that ordinary-disability benefits are offset by a workers' compensation award. Just as we need accord little deference to the Board's fact-finding on the issue of credibility, see *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 587–88 (1988), we also need not defer to an agency's determination of a question of law not inextricably related to the agency's expertise. *Mayflower Securities Co. v. Bureau of Securities*, 64 *N.J.* 85, 93 (1973). Moreover, it is particularly difficult to justify the Board's narrow interpretation of good cause in this context. It was the Board's regulation, combined with its failure to provide Mrs. Steinmann with information material to her decision, that prevented petitioner from selecting her retirement option with adequate knowledge of the relevant facts. As Judge O'Brien pointed out below, "a conclusion that [the Board] did not act fairly is difficult for this agency to accept and its refusal to do so is, in my opinion, suspect." 235 *N.J.Super.* 356, 372 (1988) (O'Brien, J.A.D., dissenting).

We find that the facts in this record demonstrate "good cause" to permit Mrs. Steinmann to change her pension designation, irrespective of her knowledge concerning the workers' compensation offset.[10] The "good cause" derives from the fact that when Mrs. Steinmann applied for a disability pension, she was unable to make an informed choice among her retirement options. The parameters of the "good cause" standard we adopted in *Duvin, supra*, 76 *N.J.* 203, should be sufficiently flexible to accommodate the legislative purpose of affording

---

[10]The Appellate Division majority was also impressed with the fairness of a procedure that would allow retirees to change their retirement option: "Indeed, if we were establishing regulations *de novo*, we might conclude that retirement plans could be reopened at any time to provide the maximum benefits available to retirees." 235 *N.J.Super.* at 360–61.

public employees the right to make informed choices among the statutorily-authorized retirement options. In the context of this case, Mrs. Steinmann could not have made an informed choice without more information from the Board concerning calculation of the workers' compensation offset. Since the Board could easily compare the amounts she would have received from an early retirement and from an ordinary-disability retirement, it should at least have informed Mrs. Steinmann of the approximate amount of the workers' compensation award that would generate an offset against an ordinary-disability pension large enough to make that option less attractive than early retirement. Armed with that information, Mrs. Steinmann and her counsel could have attempted to predict whether the compensation award would be above or below the critical figure.

Thus, we do not hold as a matter of law that the Board must allow all retirees faced with Mrs. Steinmann's options to change their election after the workers' compensation award is final. However, at oral argument we were informed by the Board's counsel that the number of retirement applications that pose this problem is quite limited. That would suggest that the Board should seriously evaluate whether, consistent with its overall responsibility for administration of the teachers' pension and annuity fund, *N.J.S.A.* 18A:66-56, a modification of its rules that would defer in such cases final election of a retirement option until after the compensation award has been made would be feasible and appropriate. *Cf. Texter v. Department of Human Servs.*, 88 *N.J.* 376 (1982) (on appeal from final decision terminating home health-care benefits under medical assistance for the aged program, Court remanded matter to Commissioner to consider amendment of income-eligibility standard established in 1963). In the event the Board is unable to conclude that such a modification would be feasible and appropriate, it must at a minimum assure that all retirees confronted with Mrs. Steinmann's dilemma have sufficient information on which to base as informed a choice as possible. Because of our conclusion that Mrs. Steinmann could not make an informed

choice, we find good cause to permit her to change her pension designation.

The judgment of the Appellate Division is reversed and the matter remanded to the Board for further proceedings consistent with this opinion.

APPENDIX "A"

### WORKMENS' COMPENSATION ACTUARIAL REDUCTION WORKSHEET

PERS

Name _____  TPAF #_____ Date _____

Retirement date _____  Normal monthly allowance:

Type _____  1. Pension − $_____

Option _____  2. Annuity − $_____

3. Total − $_____

Workmens' compensation award: (Effective _____)

4. $_____ per weeks for ___ weeks ....................... $_____

5. Less amount paid prior to retirement date:
$_____ × ___ weeks.................................. $_____

6. Balance of award remaining on date of retirement........ $_____

7. Actuarial) $_____ ÷ _____ .. $_____ Annual reduction.
Reduction) (Line 6) (SLA factor)
$_____ Monthly

8. If pensioner is receiving a lifetime award from the 2nd Injury Fund, the reduction is 100% of weekly award on Line 4 ............ $_____

Adjusted monthly allowance: Monthly − ( × 4).. $_____

9. Pension − $_____ − Monthly red. $_____ ..... $_____
(Line 1) (Line 7 or 8)

10. Annuity − (Line 2)...................................... $_____

11. Reduced monthly allowance ............................. $_____

Summary:

12. Reduce retirement allowance to $_____ monthly, effective _____, check dated _____.

13. Overpayment of pension from date of ret. to date of adj. .. ___ months.

14. Original pens. $_____ − Reduced pens. $_____ .. $_____
Mo. Red. (Line 1) (Line 9)

15. Monthly red. $_____ × mos. on ret. _____ .. $_____
Overpayment (Line 14) (Line 13)

16. Secondary adjustment if pensioner cannot reimburse retirement system by lump sum. Additional actuarial reduction is permitted.

Overpayment $_____ ÷ _____ .. $_____ Annual reduc-
(Line 15) (SLA factor) tion.
$_____ Monthly.

Calculated by _____ Date _____

POLLOCK, O'HERN and GARIBALDI, Justices, dissenting.

We would affirm substantially for the reasons expressed in the majority opinion filed in the Appellate Division, reported at 235 *N.J.Super.* 356 (1988).

*For reversal*—Chief Justice, WILENTZ and Justices CLIFFORD, HANDLER and STEIN—4.

*For Affirmance*—Justices POLLOCK, O'HERN and GARIBALDI—3.