**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2135-19

ROBYN D. FISHER,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM

     Respondent-Respondent.

_____

Submitted April 12, 2021 – Decided June 25, 2021

Before Judges Sabatino and Gooden Brown.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. x-xxx379.

Stayton Law, LLC, attorneys for appellant (Herbert J. Stayton, Jr., on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Connor Martin, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Robyn Fisher appeals from the December 18, 2019 final agency decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) denying her request to reinstate her administrative appeal. Fisher voluntarily withdrew her appeal of the denial of her application for accidental disability retirement (ADR) benefits after the matter was transferred to the Office of Administrative Law (OAL) for a hearing and the Administrative Law (ALJ) heard testimony from three witnesses but had not yet issued an initial decision. Because our review of the record in light of the relevant legal precedents supports the Board's decision, we affirm.

We glean these facts from the record. Fisher was enrolled in PERS in 1992 when she was employed as a Security Guard for the Camden City Parking Authority. Over the years, Fisher worked as a Clerk for the Camden City Housing Authority and as a Confidential Assistant with the Camden County Board of Elections, transferring her PERS benefits with each position. Fisher ultimately left government employment in 2017.

On May 9, 2015, while still employed by Camden County Board of Elections, Fisher "fell down steps" at City Hall in Camden, spraining her ankle and straining her knee and back. Fisher fell while attending a teaching

assignment for work. After the fall, Fisher drove herself to the urgent care and was released within twenty-four hours. Fisher reported the injury to her employer on May 11, 2015.

On November 3, 2015, Fisher "tripped on [a] curb, falling face forward" at the Parks Department in Cherry Hill while she was retrieving "provisional ballot bags" in the course of her employment with the Camden County Board of Elections. She "scraped [the] palms of [her] hands [and] knees [and] hurt [her] right shoulder." Fisher also "experienced [pain] in [her] lower back." Fisher drove herself to the emergency room and was released within twenty-four hours. She reported the injury to her employer the following day. A co-worker witnessed Fisher "being helped up off the ground," but "did not see her fall."

On March 11, 2016, Fisher submitted an application for ordinary disability retirement benefits (ODR). In her application, Fisher listed her disability as:

> Cognitive changes since chemotherapy for breast cancer in 2009-2010. Trouble processing information, unable to focus or concentrate, unable to complete tasks on time. Trouble finding [her] words, constantly smelling cigarette smoke, daily migraines[,] and vertigo. Falling and dropping things, bumping into walls, dizziness. Panic attacks and constant anxiety, major depressive disorder, social anxiety disorder. Chronic pain in shoulder, knees[,] and ankles. Weakness and fatigue.

On February 16, 2017, the Board denied Fisher's application for ODR benefits based on its determination that she was "not totally and permanently disabled from the performance of [her] regular and assigned duties pursuant to N.J.S.A. 43:15A-42 and relevant case law." The notification letter explained that based on her "years of service," Fisher "qualif[ied] for a Deferred Retirement," which meant she would be eligible to collect retirement benefits following her sixtieth birthday.[1] The notification also informed Fisher that she could appeal the Board's denial of ODR benefits within forty-five days, after which the determination would be final.

On March 18, 2017, Fisher's counsel notified the Board that Fisher was appealing the February 16, 2017 denial of ODR benefits and requested an administrative hearing. However, two days earlier, on March 16, 2017, Fisher had submitted an application for ADR benefits. In that application, Fisher listed her disability as "orthopedic and neurologic residuals" stemming from the November 3, 2015 trip and fall incident.[2] In light of the ADR application, on

---

[1] Fisher was born in 1965.

[2] "The main difference between [ADR and ODR] is that [ODR] need not have a work connection. In addition, an [ADR] entitles a member to receive a higher level of benefits than those provided under an [ODR]." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42-43 (2008).

March 31, 2017, Fisher's counsel notified the Board that she was withdrawing her ODR application and attendant appeal, electing instead to proceed with the March 16, 2017 ADR application.

On September 20, 2017, the Board denied Fisher's application for ADR benefits. The Board explained:

> In making its determination, the Board noted that Ms. Fisher filed her application on the basis of an incident described as occurring on November 3, 2015. Also, the Board considered an incident that occurred on May 9, 2015 which was noted on the employer certification.
>
> The Board . . . determined that both incidents were identifiable as to time and place, are considered undesigned and unexpected and occurred during the performance of Ms. Fisher's regular and assigned duties. However, the Board determined there is no evidence in the record of a total and permanent disability as a result of either of these incidents.

In making its determination, the Board evidently relied on an August 12, 2017 Retirement System's Medical Review Board (MRB) report. The MRB found "[n]o objective evidence for an orthopedic disability" based on a review of Fisher's independent medical examination, medical records, and current job description. As a result, the MRB did not "consider [Fisher] to be totally and permanently disabled" and unable "to perform the duties of [her] job."

5

Thereafter, Fisher filed a timely administrative appeal. On November 9, 2017, the Board approved her request for a hearing and transferred the matter to the OAL as a contested case. See N.J.S.A. 52:14B-1 to -31. On July 24 and October 9, 2018, an ALJ presided over Fisher's hearing during which both Fisher and the Board presented their respective cases. At the July 24 proceeding, the ALJ heard testimony from Fisher and her orthopedic expert, and on October 9, the Board's expert testified. The following day, October 10, 2018, prior to the conclusion of the hearing and the issuance of an initial decision by the ALJ, through counsel, Fisher submitted a signed "Withdrawal of Appeal" to the ALJ, with a copy to the Board, "withdrawing [her] appeal of the denial of [her] application for [ADR] benefits." The withdrawal neither explained the reason for the withdrawal nor limited the withdrawal in any way.

Approximately three months later, on January 30, 2019, Fisher submitted another application for ODR benefits, listing "orthopedic and neurologic injuries to [her] right shoulder[,] bilateral knees[,] bilateral hands[,] right ankle[,] right wrist[,] and low back" as the disability. On January 31, 2019, the Division of Pensions and Benefits (Division) advised Fisher in a letter that she could not file another application for disability retirement for her "shoulders, knees, hands, ankle, wrist and back" because she was "not found disabled" in both her first

A-2135-19

ODR application and her prior ADR application, which she appealed and "then withdrew." The Division determined that the September 20, 2017 denial by the Board of her ADR application "stands as the final decision" and "[n]o further [a]pplications for [d]isability [r]etirement for the same ailments will be accepted."

On March 4, 2019, Fisher's counsel responded to the Division's letter, explaining the circumstances of Fisher's withdrawal of her ADR benefits appeal. According to counsel, when he arrived for the scheduled October 9, 2018 OAL hearing during which the Board's expert was scheduled to testify, Fisher "advised [him] that she had shoulder surgery scheduled." Counsel continued:

> I spoke with the [Deputy Attorney General (DAG) representing the Board] and advised him of this situation and suggested . . . that our options were to: (1) adjourn the testimony of [the Board's expert] until after [Fisher's] surgery and re-evaluation; or, (2) to proceed with [the expert's] testimony, knowing that he would have to be recalled after re-evaluation. The DAG indicated that he would have to call Pensions to discuss the situation. After his phone conference with a representative of Pensions, he indicated that his directive was to proceed with [the expert's] testimony. There then ensued some discussion with the [c]ourt wherein I indicated that the most expeditious option was to withdraw[ Fisher's] pending application, re-file and resume the application process after [Fisher] was re-evaluated. [The Board's expert's] testimony was taken. At no time did the DAG indicate to me, or the

7

ALJ, that Pensions would take the position set forth in [the Division's] letter.

Consequently, I would request that this matter be referred back to the [OAL] for resumption of the hearing on [Fisher's] application for disability retirement benefits.

On August 2, 2019, after reviewing counsel's "correspondence, [c]ertification . . . , and all documentation in the record," the Board denied Fisher's request to reinstate the appeal. In the notification letter, the Board explained that

there was no requirement that Ms. Fisher withdraw her matter from the OAL so that she may proceed with an application for [ODR] benefits. Ms. Fisher had filed and withdrew several disability applications, all generally on the same impairments. . . . The matter was ripe for a hearing before the ALJ and Ms. Fisher opted to withdraw. Moreover, the regulations authorize the Board to award an [ODR] benefit to an [ADR] applicant if the member is found to be disabled from performing their regular and assigned duties without the need for a separate hearing or application. N.J.A.C. 17:2-6.7. Thus, the ALJ had jurisdiction to consider whether Ms. Fisher was eligible for [ODR] benefits.

The letter also advised Fisher of her appeal rights, specifying that if an appeal was filed within the forty-five-day timeframe for appeal, the Board would "determine whether to grant an administrative hearing based upon the standards for a contested case hearing set forth in the Administrative Procedure Act,

8

N.J.S.A. 52:14B-1[,] and the Uniform Administrative Procedure Rule, N.J.A.C. 1:1-1 et seq." Further, "[i]f the granted appeal involve[d] solely a question of law, the Board may retain the matter and issue a final determination which shall include detailed findings of fact and conclusions of law based upon the documents, submissions and legal arguments of the parties."

On August 13, 2019, Fisher's counsel sent a letter to the Board appealing the Board's determination that Fisher "would not be able to re-file an application on conditions included in the withdrawn application," and that Fisher's "withdrawal was a final disposition of the matter." Counsel specifically appealed the denial of "Fisher's request to reinstate her appeal." The letter notified the Board that Fisher would "rely on the procedural history of th[e] matter, the transcript of the hearing and discussions on the record with [the ALJ],"[3] counsel's "[c]ertification dated July 2[], 2019,[4] the medical records and

---

[3] In the December 18, 2019 final agency decision, the Board noted that Fisher's counsel "neither cited to nor provided the hearing transcripts" in support of the appeal. Although the July 24, 2018 transcript of the OAL hearing was provided as part of the record on this appeal, the October 9, 2018 transcript that presumably contained discussions on the record pertaining to Fisher's withdrawal of her appeal was not provided.

[4] Counsel's July 2, 2019 certification was not provided as part of the appellate record. However, we presume that it was the same certification reviewed by the Board in its August 2, 2019 denial of Fisher's request to reinstate her appeal and

reports previously submitted as well as additional medical documentation and information to be submitted on the issue of total and permanent disability from the performance of her regular and assigned duties as well as causal relationship." Counsel "requested that th[e] matter be referred by the Board for an administrative hearing based upon the standards for a contested case hearing."

On December 18, 2019, the Board issued a final agency decision reiterating its denial of Fisher's request to reinstate her appeal. As a threshold matter, the Board denied Fisher's request for an administrative hearing, finding "no material facts in dispute." The Board then made "[f]indings of [f]act," reciting the procedural history of the matter. See Sloan ex rel. Sloan v. Klagholtz, 342 N.J. Super. 385, 392 (App. Div. 2001) ("If a matter before an agency does not present contested material issues of fact that can be decided only 'after [an] opportunity for an agency hearing,' it is not a contested case subject to transfer to the OAL." (alteration in original) (quoting N.J.S.A. 52:14B-2)).

---

that it recounted the circumstances of the withdrawal of the appeal contained in counsel's March 4, 2019 response to the Division's letter.

Next, the Board determined it was able to render "conclusions of law . . . on the basis of the retirement system's enabling statutes and regulations without the need for an administrative hearing." In that regard, in addition to relying on the reasons stated in its August 2, 2019 denial letter, in denying Fisher's request to reinstate her appeal, the Board added:

> Under the Uniform Administrative Procedure Rules, a party may withdraw their request for a hearing on the contested issues before the OAL upon written notice to the ALJ and all parties. N.J.A.C. 1:1-19.2. Once a party withdraws their request for a hearing, the ALJ returns the matter to the clerk and the matter is returned to the agency head for disposition. [Ibid.] In this case, you filed papers to withdraw Ms. Fisher's appeal from the OAL. The Board notes that there is no language in either document which limits the withdrawal to a specific issue in the case, and the withdrawal was not filed with any language respecting whether it was with or without prejudice. In light of the procedural posture of this case, the Board also found that you failed to provide a reasonable basis or good cause to reinstate a matter that was withdrawn from the OAL, returned to the agency, and placed on the Board's meeting agenda to note the withdrawal.
>
> The Board also notes that there was no reason to withdraw Ms. Fisher's appeal from the OAL in order to pursue an [o]rdinary, rather than an [a]ccidental disability pension. PERS members may apply for either [o]rdinary or [a]ccidental [d]isability retirement benefits. N.J.S.A. 43:15A-42, 43. Under both statutory schemes, a member must establish a total and permanent disability in order to qualify for either disability benefit. [Ibid.] Moreover, the regulations

11

authorize the Board to award an [ODR] benefit to an [a]ccidental [d]isability applicant if the member is found to be disabled from performing their regular and assigned duties without the need for a separate hearing or application. N.J.A.C. 17:2-6.7.

In this ensuing appeal, Fisher argues that "[t]here is no prejudice to either party in re-opening the OAL proceedings to supplement the record with expert medical testimony and/or medical records relative to the impact of Fisher's shoulder surgery." She asserts that because "the interests of justice and a liberal reading of the applicable pension laws support permitting [her] to reinstate her appeal," the "Board's denial of her request . . . is unreasonable, arbitrary and capricious."

Our review of decisions by administrative agencies is limited, with the party challenging the validity of the administrative action carrying a substantial burden of persuasion. In re Stallworth, 208 N.J. 182, 194 (2011). Under our standard of review, an agency's determination must be sustained "'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). Thus, on appeal, our role is limited to the evaluation of three factors:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency

12

follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Herrmann, 192 N.J. at 28 (quoting Mazza v. Bd. of Trs., Police & Firemen's Ret. Sys., 143 N.J. 22, 25 (1995)).]

When the agency's decision satisfies those criteria, we are obliged to afford substantial deference to the agency's expertise and superior knowledge of a particular field, even if we would have reached a different result from that reached by the agency. Ibid.; In re Taylor, 158 N.J. 644, 657 (1999). While we are not bound by an agency's interpretation of legal issues, which we review de novo, Russo, 206 N.J. at 27, "[w]e must give great deference to an agency's interpretation and implementation of its rules enforcing the statutes for which it is responsible." Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 13 (2005)). "Such deference has been specifically extended to state agencies that administer pension statutes." Ibid.

We acknowledge "the well-settled proposition that since pension laws are remedial social legislation, they must be liberally construed in favor of the persons intended to be benefitted thereby." Bumbaco v. Bd. of Trs. of Pub.

13                                                                                    A-2135-19

Emp.s' Ret. Sys., 325 N.J. Super. 90, 94 (App. Div. 1999) (citing Steinmann v. Dep't of Treasury, 116 N.J. 564, 572 (1989)).[5]  Relying on this recognized liberality in the interpretation of pension laws to benefit the members, Fisher challenges the Board's denial of her request to reinstate her administrative appeal as unreasonable.

Our Supreme Court has recognized that "[t]he power to reopen proceedings 'may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law.'"  Minsavage for Minsavage v. Bd. of Trs., Teachers' Pension & Annuity Fund, 240 N.J. 103, 107-08 (2019) (quoting In re Van Orden, 383 N.J. Super. 410, 419 (App. Div. 2006)).  However, the Board's exercise of that inherent power should be invoked only when a member demonstrates "good cause, reasonable grounds, and reasonable diligence."  Id. at 109.

---

[5]  While "an employee is entitled to [such] liberality . . . when eligible for benefits, . . . eligibility is not to be liberally permitted."  Smith v. State, Dep't of Treasury, Div. of Pensions & Benefits, 390 N.J. Super. 209, 213 (App. Div. 2007).  "Instead, in determining a person's eligibility to a pension, the applicable guidelines must be carefully interpreted so as not to 'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'"  Ibid. (alteration in original) (quoting Chaleff v. Teachers' Pension & Annuity Fund Trustees, 188 N.J. Super. 194, 197 (App.Div. 1983)).

In Steinmann, 116 N.J. at 565, and Duvin v. State, Dep't of Treasury, Pub. Employees' Ret. Sys., 76 N.J. 203, 208 (1978), the Court determined that the Board's inherent powers allowed members to reopen their retirement selections based on considerations of good cause and reasonable diligence.

> The pensioners in Steinmann and Duvin selected sub-optimal retirement options. This Court held that the Steinmann pensioner had shown good cause for amending her pension designation and should have been permitted to do so, and that the Duvin pensioner should have the opportunity at further proceedings to show good cause "for reopening his original pension application and allowing him to claim accidental disability retirement in lieu of early retirement allowance. . . ."
>
> [Minsavage, 240 N.J. at 109 (quoting Steinmann, 116 N.J. at 565, 577-78; Duvin, 76 N.J. at 205-06, 208).]

In Minsavage, the Court considered "whether a widow [could] modify the retirement application of her recently deceased husband, who was a member of the Teachers' Pension and Annuity Fund . . . , even though his application was never approved because he selected a retirement option for which he was ultimately ineligible." Id. at 105. The Court held "that neither membership nor prior approval of a retirement application [was] required for modification of a retirement selection where good cause, reasonable grounds, and reasonable diligence [were] shown," and remanded for the Board "to allow [the widow] the

15

A-2135-19

opportunity to argue in favor of modification under that standard." Ibid. The Court pointed out that "[s]uch proof must include evidence that [the decedent] qualified for ordinary disability retirement and that, but for his incapacity, he would have changed his retirement selection to ordinary disability." Id. at 110.

Here, the interests of justice do not weigh in favor of allowing Fisher to reinstate her appeal, which she voluntarily withdrew on the advice of counsel. Unlike Steinmann, Duvin, and Minsavage, Fisher did not select a sub-optimal retirement option. On the contrary, she selected an ADR, which "entitles a member to receive a higher level of benefits than those provided under an [ODR]." Patterson, 194 N.J. at 43. Fisher asserts she "exercised her right to withdraw[] her pending application on appeal before the OAL with the intention of rightfully re-filing an application for ODR benefits." However, as the Board pointed out, if Fisher was found to be disabled from performing her regular and assigned duties but ineligible for ADR, N.J.A.C. 17:2-6.7 authorized the Board to award an ODR benefit instead, without the need for a separate hearing or application.

Further, although Fisher's attorney subsequently explained the circumstances of her withdrawal to the Board, at the time she withdrew her appeal, the withdrawal was unconditional. Thus, her claim that she was unaware

that "the withdrawal was with prejudice" rings hollow. See Maeker v. Ross, 219 N.J. 565, 578 (2014) ("[E]veryone is presumed to know the law. . . ."). Even considering the circumstances of Fisher's withdrawal, a re-evaluation following impending shoulder surgery was unnecessary because in order to support her disability retirement application, Fisher had to prove that she was totally and permanently disabled at the time she left employment in 2017. See N.J.A.C. 17:1-6.4(a) ("Each disability retirement applicant must prove that his or her retirement is due to a total and permanent disability that renders the applicant physically or mentally incapacitated from performing normal or assigned job duties at the time the member left employment. . . ."). Thus, her condition following shoulder surgery over a year later was immaterial.

Additionally, to support her request to the Board for reinstatement of her appeal, Fisher's counsel indicated in his August 13, 2019 letter that, among other things, Fisher would rely on the transcript of the October 9, 2018 hearing and "discussions on the record with the [ALJ]" that purportedly related to the withdrawal of her appeal. However, as noted by the Board in its final decision, Fisher's counsel "neither cited to nor provided the hearing transcripts" in support of the appeal. Likewise, Fisher failed to provide the Board with additional

medical documentation on the issue of total and permanent disability when afforded an opportunity to do so.

On this record, we are satisfied that Fisher failed to show good cause, reasonable grounds, or reasonable diligence to invoke the Board's exercise of its inherent power to reopen the proceedings and reinstate her appeal. Thus, there is no showing that the Board's decision was arbitrary, capricious, or unreasonable, or that it lacked fair support in the record to justify our intervention.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION