**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3453-21

GARNELL BAILEY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION
AND ANNUITY FUND,

     Respondent-Respondent.

_____

Submitted September 20, 2023 – Decided December 8, 2023

Before Judges Vernoia and Gummer.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Jacobs & Barbone, PA, attorneys for appellant (David A. Castaldi, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Yi Zhu, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Garnell Bailey appeals from a June 3, 2022 final administrative determination issued by respondent Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF), denying her request to reopen her retirement application — nearly two years after the Board had approved it — so she could change the retirement type from "service" to "ordinary disability."  The Board denied petitioner's request, finding she had not demonstrated "good cause, reasonable grounds, and reasonable diligence" pursuant to Minsavage v. Board of Trustees, Teachers' Pension and Annuity Fund, 240 N.J. 103, 105 (2019).  Unpersuaded by petitioner's argument that the Board's decision was unreasonable, we affirm.

I.

Petitioner was a member of TPAF, most recently employed as an assistant superintendent for a board of education.  On June 12, 2019, petitioner submitted a retirement application, seeking a retirement date of October 1, 2019, and identifying her "Retirement Type" as "service."  On July 24, 2019, she contacted the New Jersey Division of Pensions and Benefits (Division) by telephone to ask about modifying her application to change the requested type of retirement from "service" to "ordinary disability."  "'Service' retirement is available to any

employee at age sixty regardless of years in service." Steinmann v. Dep't of Treasury, 116 N.J. 564, 566 (1989). "'Ordinary disability' retirement is available to retirees under sixty years of age with ten or more years of credited service who are considered 'totally and permanently [incapacitated].'" Id. at 567 (quoting N.J.A.C. 17:3-6.10). To qualify for ordinary disability retirement, a member must be "physically or mentally incapacitated for the performance of duty at the time the member terminates employment and should be retired." N.J.A.C. 17:3-6.7(a)(2). A member must support an application for a disability retirement based on a physical incapacity with at least two reports: one from his or her treating physician and one from another physician or hospital records. N.J.A.C. 17:3-6.1(g)(1).

Petitioner advised the Division's representative she had been diagnosed with a "degenerative disc and joint disease" and asked about "the pros and cons" of changing her retirement type to "disability." The representative advised petitioner that if she wanted to modify her retirement type, she had to do so before her retirement benefits became due and payable, which would occur thirty days after the Board approved her retirement application or the effective retirement date, whichever was later. The representative explained the requirements for "ordinary disability" retirement, including that petitioner had

to provide sufficient documentation from healthcare providers proving her disability pursuant to the Division's policies, and indicated the review of an application for an ordinary disability retirement "typically take[s] a lot longer" than the review of an application for service retirement. The representative said petitioner needed to think about whether she qualified for disability retirement and to discuss the issue with her medical providers in order to make an informed decision.

Petitioner stated she did not want to cancel her pending application because she did not want any delay in receiving her retirement benefits and did not want to lose any monthly benefits while waiting for a decision on whether she qualified for a disability retirement. The representative advised petitioner "it [was] up to [her]" and that if the Board denied a member's application for disability retirement, the member could still receive a service retirement if the member qualified for it. The representative also told her that "as long as [she did not] change the date of [her] retirement . . . [she did not] have to cancel the application."

In an August 2, 2019 letter, the Division provided petitioner with information regarding her retirement benefits based on the retirement date and type – service – she had stated in her application. The Division instructed

4

petitioner to "be sure to read this entire letter, as the following pages contain important information about your retirement." The Division also advised petitioner: "You have the right to withdraw, cancel, or change your application for retirement at any time before the later of [thirty] days after your retirement date or [thirty] days after the Board of Trustees approves your retirement."

During its August 20, 2019 meeting, the Board approved petitioner's application for service retirement effective October 1, 2019. The Division advised petitioner of that decision in a letter issued the same day. In that letter, the Division also stated: "In accordance with law, you have until thirty days after (A) the effective date of your retirement, or (B) the date your retirement was approved by the Board of Trustees, whichever is the later date, to make any changes to your retirement." Petitioner did not make any changes to her retirement during that time period.

Nearly two years later, on October 27, 2021, petitioner contacted the Division by telephone and email, asking about changing her retirement type to an ordinary disability retirement. In a November 1, 2021 letter, the Division informed petitioner it could not grant her request to change her retirement type because she had had until September 19, 2019, to change her retirement type and her retirement was "past due and payable." The Division was correct in

stating petitioner's retirement was "past due and payable" but incorrect about the date. Petitioner's retirement had become due and payable on October 31, 2019.

In a December 1, 2021 letter, petitioner appealed the denial of her request to reopen her retirement application to modify the retirement type. Petitioner acknowledged her retirement had been due and payable on October 31, 2019, but asserted good cause existed to reopen and amend her application. In support of her good-cause assertion, petitioner submitted a June 27, 2018 report from her treating physician and a June 1, 2021 decision by an administrative law judge (ALJ) regarding petitioner's application for Social Security disability insurance benefits. The doctor indicated petitioner was seeking a "[n]ote for work restricting from walking up stairs" and "documentation to help avoid certain stressors on her job" and stated she "has had issues with both her carpal tunnel as well as a lumbar disc disease." The ALJ found petitioner had established her claim that she was disabled under applicable sections of the Social Security Act since October 1, 2019. Petitioner asserted that "had she actually been declared disabled in October 2019" she "could have amended her application by October 31, 2019." In a December 10, 2021 letter, the Division acknowledged receipt of petitioner's appeal and that petitioner had had only until October 31, 2019, to make any changes to her retirement application.

6

During a February 3, 2022 meeting, the Board considered petitioner's appeal and again rejected her request to change her retirement type to ordinary disability, finding she was precluded from changing her retirement type after her retirement had become due and payable on October 31, 2019. The Board memorialized that decision in a February 7, 2022 letter to petitioner.

Petitioner appealed that decision in a March 23, 2022 letter to the Board. Petitioner again contended that although the due-and-payable date of her retirement had passed, she had good cause to amend her retirement type. She faulted the Board for failing to consider the Minsavage decision. She cited the ALJ's decision and Dr. Williams's report as well as a June 8, 2018 note from Dr. Williams indicating she could return to work the following Monday but was restricted from using stairs until the elevator was fixed and a September 14, 2020 report from Dr. Ralph G. Cataldo, which was "prepared and submitted for workers' compensation purposes only and [was] not to be used for any other purpose." She asserted in the appeal letter that when she applied for retirement and on the date of her retirement, she "could not appreciate the gravity of her injuries sustained during the course of her employment" and, thus, "could not have made an informed choice regarding her retirement." She claimed that although she was "disabled at the time she retired. . . . [I]t was not until well

after her Service pension became due and payable that she was examined with an eye towards determining whether she was disabled."

During a May 5, 2022 meeting, the Board considered petitioner's recent submission and found she was not entitled to an administrative hearing. On June 3, 2022, the Board issued a final administrative determination, detailing its findings of fact and conclusions of law. The Board declined to hold an administrative hearing because it found no genuine issue of material fact. Noting the importance of maintaining the "fiscal integrity" of TPAF and distinguishing petitioner's case from those in which courts have found grounds to reopen a retirement application, the Board concluded petitioner had not met the "good cause, reasonable grounds, and reasonable diligence" standard articulated by the Court in Minsavage, 240 N.J. at 105.

On appeal, petitioner argues the Board acted unreasonably in denying her request to reopen her retirement application to change her retirement type. We disagree and affirm.

## II.

Our role in reviewing an administrative agency's decision is limited. Zilberberg v. Bd. of Trs., Teachers' Pension & Annuity Fund, 468 N.J. Super. 504, 509 (App. Div. 2021). We "recognize that state agencies possess expertise

A-3453-21

and knowledge in their particular fields." Caucino v. Bd. of Trs., Teachers' Pension & Annuity Fund, 475 N.J. Super. 405, 411 (App. Div. 2023) (quoting Caminiti v. Bd. of Trs., Police & Firemen's Ret. Sys., 431 N.J. Super. 1, 14 (App. Div. 2013)). Consequently, we review a quasi-judicial agency decision under a deferential standard of review and will affirm the decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)); see also Caucino, 475 N.J. Super. at 411.

In determining whether an agency action is arbitrary, capricious, or unreasonable, we consider "(1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018). "The burden of proving that an agency action is arbitrary, capricious, or unreasonable is on the challenger." Parsells v. Bd. of Educ. of Borough of Somerville, 472 N.J. Super. 369, 376 (App. Div. 2022).

We are not bound by an agency's statutory interpretation or other legal determinations. Russo, 206 N.J. at 27. Nevertheless, we accord deference to statutory interpretation by the agency charged with enforcing the statute because of the agency's experience and specialized knowledge. Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475-76 (2019). "Such deference has been specifically extended to state agencies that administer pension statutes." Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election L. Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)).

"The Teachers' Pension and Annuity Fund Law, N.J.S.A. 18A:66-1 to - 93 . . . , 'provides a comprehensive, uniform state-wide plan for the payment of retirement benefits to'" its members. Caucino, 475 N.J. Super. at 413 (quoting Fair Lawn Educ. Ass'n v. Fair Lawn Bd. of Educ., 161 N.J. Super. 67, 73 (App. Div. 1978)). To receive retirement benefits, a member must complete and submit an online application form on or before the requested retirement date. N.J.A.C. 17:3-6.1(a). "Generally, a 'member shall have the right to withdraw, cancel, or change an application for retirement at any time before the member's retirement allowance becomes due and payable by sending a written request signed by the member.'" Minsavage, 240 N.J. at 108 (quoting N.J.A.C. 17:3-

10

6.3(a)).  "A member's retirement allowance shall not become due and payable until [thirty] days after the date the Board approved the application for retirement . . . ."  N.J.A.C. 17:3-6.2; see also Minsavage, 240 N.J. at 108.  If a member does not amend his or her application within that thirty-day window, "the retirement shall stand as approved by the Board."  N.J.A.C. 17:3-6.3(a).  The Board, however, "'may honor a pensioner's request to reopen her retirement selection' upon 'a showing of good cause, reasonable grounds, and reasonable diligence' even 'after it is due and payable.'"  Minsavage, 240 N.J. at 108 (quoting Steinmann, 116 N.J. at 573).

The Board's determination that petitioner failed to meet that standard was not arbitrary, capricious, or unreasonable.  It was consistent with applicable law and supported by the evidence in the record.  The record is devoid of any evidence petitioner had an incapacity that prevented her from amending her application timely or that rendered her unable to make an informed choice.  Cf. id. at 110 (record contained evidence indicating TPAF member did not amend his retirement application because he was incapacitated due to cancer); Harris ex. rel. Harris v. Bd. of Trs. of Pub. Emps' Ret. Sys., 378 N.J. Super. 459, 462-63 (App. Div. 2005) (pension member signed statement declaring terminal cancer rendered her incapable of changing her retirement form timely).  The

11

record demonstrates petitioner was not deprived of the opportunity to make an informed choice about her retirement-type selection based on misinformation or inadequate information about her retirement benefits. Cf. Steinmann, 116 N.J. at 576 (pension board failed to provide member with material information); Outland v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 326 N.J. Super. 395, 405-06 (App. Div. 1999) (member received incomplete information from employer regarding withdrawal of her pension contributions); Fiola v. Dep't of Treasury, 193 N.J. Super. 340, 351 (App. Div. 1984) (pension member given inadequate or ambiguous information).

Petitioner contends that she has good cause to amend her retirement application "because she did not make an informed choice at the time of her retirement," citing the July 24, 2019 telephone call as evidence. In fact, the call demonstrates petitioner was well informed. She was aware of the medical condition on which she bases her disability claim, telling the Division representative she had been diagnosed with a "degenerative disc and joint disease." She knew she had the option of pursuing a disability retirement and was informed about what was required to qualify for an ordinary disability retirement.

12

In her brief, petitioner asserts the representative "intimated" her injuries might not qualify her for ordinary disability retirement and that, as a result, she was "dissuaded" from then pursing an ordinary disability retirement. Those assertions are not supported by the recording of the call, which is in the record, or any affidavit or certification of petitioner. The call demonstrates the representative suggested petitioner discuss the issue of her disability with her medical providers so she could make an informed decision and that the decision about which retirement type to request ultimately was "up to [her]." Instead of making those inquiries with her medical providers, petitioner chose to proceed with the service retirement application. As petitioner conceded in the March 23, 2022 letter to the Board, "it was not until well after her Service pension became due and payable that she was examined with an eye towards determining whether she was disabled."

That record does not support a finding of "good cause, reasonable grounds, and reasonable diligence" warranting the reopening of petitioner's application. Minsavage, 240 N.J. at 105. Petitioner has not demonstrated the Board acted arbitrarily, capriciously, or unreasonably in denying her request to reopen her retirement application or that its decision lacked support in the record. Accordingly, we affirm.

13

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3453-21